Floyd A. DEMANES, as Personal Representative of the Estate of Daniel B. Callahan, Deceased, Plaintiff,

v.

UNITED AIR LINES, a corporation, et al., Defendants.

Nancy Jane REYNOLDS et al., Plaintiffs,

v.

UNITED AIR LINES et al., Defendants.

Iris J. LeROY et al., Plaintiffs,

v.

UNITED AIR LINES et al., Defendants.

Joan Inman BLONDEAU et al., Plaintiffs,

v.

UNITED AIR LINES et al., Defendants.

Nos. 71-38-HP, 71-873-HP to 71-875-HP.

United States District Court, C. D. California.

June 23, 1972.

A. Lee Sanders, of Demanes & Sanders, Burlingame, Cal., for Demanes.

John J. Kennelly, Chicago, Ill., and Lawrence J. Galardi, of Magana & Cathcart, Los Angeles, Cal., for Reynolds and others.

Henry Bogust and Lawrence de Coster, of Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for United Air Lines, Inc.

PREGERSON, District Judge.

These cases came on for trial on June 14, 15, and 16, 1972, on the issue of the status of plaintiffs' decedents. The four decedents—LeRoy, Reynolds, Blondeau, and Callahan—were pilots employed by defendant United Air Lines [hereinafter United]. All four were aboard United's flight 266 that departed from Los Angeles International Airport, bound for Denver, at 18:07 P.S.T. on January 18, 1969. Tragically, about four minutes after take-off, flight 266 crashed into Santa Monica Bay, at a point beyond one marine league from the shore of California. All persons aboard the aircraft died. The four decedents were not members of the operating crew of flight 266; they were, in the parlance of the airline industry, "deadheading." Plaintiffs, who are the personal representative of one of the decedents and the sur-

vivors of the other three, have sued United under the Death on the High Seas Act, 46 U.S.C. § 761 et seq., for damages arising out of the alleged wrongful deaths of the decedents. United contends that the four decedents were acting within the course and scope of their employment at the time of their deaths and, as a result, that plaintiffs are only entitled to the benefits payable under the applicable state workman's compensation laws. The Court finds that the decedents were not acting within the course and scope of their employment when they died and concludes that it has jurisdiction in admiralty to consider plaintiffs' wrongful death claims.

All four decedents lived in Denver; they were on their way home after having completed other flights for United when flight 266 plunged into the sea. The decedents were sitting in the passenger compartment of the airplane and had no responsibility for either the operation or the maintenance of flight 266. One of the decedents, in fact, was not even qualified to fly the aircraft in question. While the decedents were theoretically on call for other flight assignments, there is no evidence that United had actually given them any other flight assignments prior to their departure from Los Angeles or while flight 266 was airborne.

Furthermore, before each decedent boarded the plane, United issued to him a ticket bearing the caption "UA Crew Member-Passenger." The ticket referred to the decedent as a "passenger" in at least three other places. The ticket also directed the decedent's attention to the Warsaw Convention, 49 Stat. 3000, T.S. No. 876, and pointed out that the treaty limits the amount of a carrier's liability for the injury or death of its "passengers" on international flights. The word "passenger" can have more than one meaning; it can refer either to a person's physical position on an airplane or to his legal status vis-à-vis the carrier's liability to him under the carrier-passenger relationship. Therefore the reference on the ticket to the War-

saw Convention is significant; it indicates that when United drafted the ticket and described the decedents as passengers, it was thinking in terms of its liability for injury or death—not just in terms of the mere location of the ticketholder's seat on the aircraft. On the other hand, neither the ALPA-United collective bargaining agreement, upon which United relies to demonstrate that the decedents were acting within the course and scope of their employment, nor the predecessor collective bargaining agreements had been negotiated with the specific issue of United's liability to deadheading employees in mind. See the testimony of Jack Kanash, United's Director of Industrial Relations for flight personnel. The ticket that United issued does suffer from ambiguity. As discussed above, the word "passenger" can have more than one meaning. Nevertheless, it was United that drafted the ticket, and any ambiguity must be resolved in favor of plaintiffs.

The Court notes that the decedents received half-pay and half-flight time credit for their deadheading time. The significance of these details, however, is outweighed by other facts. The decedents were not flying from one flight assignment to another; they were being transported home. As a result, they were in a situation similar to that of an employee commuting between his home and his job. Employees, of course, do not ordinarily receive pay or credit for commuting time, but according to the testimony of Mr. Kanash, these provisions were included in the collective bargaining agreement to induce United to make more efficient use of the pilots' time—i. e., to minimize the amount of time that pilots would have to spend away from home while not actually on flight duty.

The Court believes that a preponderance of the evidence indicates that the decedents were not acting within the course and scope of their employment when they died. Therefore the Court has jurisdiction to consider plaintiffs' claims against United. United having

agreed, by stipulation filed with the Court on June 22, 1971, to contest only the issues of the decedents' status and of the amount of damages suffered by plaintiffs, plaintiffs and United are hereby ordered to appear before the Court for trial on the issue of the damages suffered by plaintiffs. Trial is presently set for June 29, 1972, at 9:30 A.M.

This Memorandum and Order shall serve as the Court's findings of fact and conclusions of law, pursuant to Rule 52(a), F.R.Civ.P.